**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CONRAD M. BLACK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 12 C 4306 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Conrad M. Black's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Petitioner's Section 2255 motion and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2). The Court further denies Petitioner's motion for a writ of coram nobis. *See Chaidez v. United States,* 655 F.3d 684, 687 (7th Cir. 2011).

**FACTUAL BACKGROUND**

**I.      Charges**

On August 17, 2006, a federal grand jury returned a seventeen-count Third Superseding Indictment against Petitioner and his co-defendants John Boultbee, Peter Atkinson, and Mark Kipnis, all of whom were senior executives at Hollinger International. Defendants David Radler and Ravelston Corporation Limited pleaded guilty and Radler agreed to cooperate with the government. On January 10, 2007, the government filed a Superseding Information removing some of the allegations from the Third Superseding Indictment. The Superseding Information charged Petitioner and his co-defendants Boultbee, Atkinson, and Kipnis with committing the

following offenses: (1) mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, including

the deprivation of the intangible right to honest services in violation of 18 U.S.C. § 1346; (2)

money laundering in violation of 18 U.S.C. § 1957; (3) obstruction of justice in violation of 18

U.S.C. § 1512(c); (4) racketeering in violation of 18 U.S.C. § 1962(c); and (5) criminal tax

violations in violation of 26 U.S.C. § 7206(2).

## II.    Jury Trial

On July 13, 2007, after extensive pretrial proceedings, approximately four months of

trial, and two weeks of jury deliberations, a jury convicted Petitioner and his co-defendants on

several counts of the Superseding Information.  In particular, the jury convicted Petitioner and

his co-defendants on several mail and wire fraud counts in violation of 18 U.S.C. §§ 1341, 1346,

involving covenants not to compete (Counts I, VI, and VII of the un-redacted Superseding

Information).  Also, the jury convicted Petitioner for obstruction of justice in violation of 18

U.S.C. § 1512(c) (Count XIV of the un-redacted Superseding Information).  On December 10,

2007, the Court sentenced Petitioner to 60 months in prison on Counts I, VI, VII and 78 months

in prison on Count XIV to run concurrently.

## III.    Appeals

Petitioner and his co-defendants appealed to the United States Court of Appeals for the

Seventh Circuit bringing the following claims: (1) there was insufficient evidence that they

engaged in conventional pecuniary fraud; (2) the government's honest services theory was

legally invalid; (3) there was insufficient evidence of fraud and a criminal mailing concerning

certain supplemental payments to support the fraud allegation in Count VI; (4) the Court erred in

giving the conscious avoidance ("ostrich") instruction; and (5) the Court should have given an

instruction concerning misrepresentations that occurred after the dates of the charged scheme. On June 25, 2008, the Seventh Circuit rejected these arguments and affirmed the defendants' convictions.  *See United States v. Black,* 530 F.3d 596 (7th Cir. 2008).

Thereafter, the United States Supreme Court granted the defendants' petition for certiorari and addressed the scope and the constitutionality of the honest services statute, 18 U.S.C. § 1346.  *See Black v. United States,* 561 U.S. ___, 130 S.Ct. 2963, 177 L.Ed.2d 695 (2010); *Skilling v. United States,* 561 U.S. ___, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010).  The Supreme Court narrowed the scope of the honest services statute, and held "that § 1346 criminalizes *only* the bribe-and-kickback core of the pre-*McNally* case law."  *Skilling,* 130 S.Ct. at 2931 (emphasis in original); *see also Black*, 130 S.Ct. at 2965.  As such, the Supreme Court held that the honest services jury instruction was erroneous because it did not include a bribe or kickback element.  *See Black*, 130 S.Ct. at 2970.  The Supreme Court remanded this case to the Seventh Circuit to determine whether this instructional error was harmless.

Thereafter, the parties filed their Circuit Rule 54 Statements of Position and Responses and the Seventh Circuit heard oral argument on September 29, 2010.  On October 29, 2010, the Seventh Circuit held that the instructional error was harmless as to one of the fraud counts, namely, Count VII.  The Seventh Circuit also concluded that there was sufficient trial evidence to support Petitioner's obstruction of justice conviction in Count XIV.  As such, the Seventh Circuit remanded the matter for a new trial on the remaining fraud counts, but advised the government to consider dismissing the remaining fraud counts.  *See United States v. Black,* 625 F.3d 386, 392-93 (7th Cir. 2010).  On December 17, 2010, the Seventh Circuit denied the defendants' petition for rehearing en banc.

3

On remand to this Court, the government elected to dismiss the remaining fraud counts remanded for retrial, and thus Petitioner stands convicted of one count of pecuniary fraud as charged in Count VII and one count of obstruction of justice as charged in Count XIV.  On June 24, 2011, the Court re-sentenced Petitioner to 42 months in prison on Counts VII and VIV to run concurrently and two years of supervised release.  Petitioner did not file a notice of appeal.  On or about May 4, 2012, Petitioner completed his prison sentence.  Because Petitioner filed the present motion before his supervised release term has ended, the government does not challenge the "in custody" requirement under Section 2255.  *See Torzala v. United States,* 545 F.3d 517, 521 (7th Cir. 2008).  Because Petitioner is still "in custody" until his supervised release term ends in May 2014, however, the Court cannot consider his alternative motion for a writ of coram nobis pursuant to the All Writs Act, 28 U.S.C. § 1651(a).  *See Chaidez v. United States,* 655 F.3d 684, 687 (7th Cir. 2011) (writ of coram nobis "provides a method for collaterally attacking a criminal conviction when a defendant is not in custody, and thus cannot proceed under 28 U.S.C. § 2255.").  The Court thus turns to Petitioner's arguments made in support of his Section 2255 motion.

## LEGAL STANDARD

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007); *see also Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  Under Section 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum

authorized by law, or it is otherwise subject to collateral attack." *Torzala,* 545 F.3d at 521

(quoting 28 U.S.C. § 2255). A Section 2255 motion is not a substitute for a direct criminal

appeal nor is it a means by which a defendant may appeal the same claims a second time. *See*

*Bousley*, 523 U.S. at 621 (relief under 2255 "will not be allowed to do service for an appeal");

*Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (Section 2255 motion is "neither a

recapitulation of nor a substitute for a direct appeal.") (citation omitted).

  If a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred

from the Court's collateral review unless the petitioner can demonstrate cause for the procedural

default and actual prejudice from the failure to appeal, *see Sandoval v. United States,* 574 F.3d

847, 850-51 (7th Cir. 2009), or that enforcing the procedural default would lead to a

"fundamental miscarriage of justice." *United States v. Fleming,* 676 F.3d 621, 625 (7th Cir.

2012). The Supreme Court defines cause sufficient to excuse procedural default as "some

objective factor external to the defense" which prevents a petitioner from pursuing his

constitutional claim. *See Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397

(1986). Prejudice means actual prejudice infecting the "entire trial with error of constitutional

dimensions." *Id*. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a

petitioner establishes that "a constitutional violation has probably resulted in the conviction of

one who is actually innocent." *Id.* at 496. To establish actual innocence, the petitioner must first

provide "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v.*

*Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The petitioner must then show

that "in light of [this] new evidence, it is more likely than not that no reasonable juror would find

him guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation and citation omitted).

## ANALYSIS

Petitioner brings the following claims in his Section 2255 motion: (1) he was denied his Sixth Amendment right to counsel of choice; (2) he was denied his Fourth Amendment right against unreasonable seizure of his property; and (3) he was denied his Fifth Amendment right to due process.

Relevant to Petitioner's Section 2255 motion is the government's seizure of the proceeds of Petitioner's sale of a New York City apartment. Specifically, in October 2005, before the grand jury returned an indictment charging Petitioner, he sold a New York apartment after which the government seized the proceeds pursuant to seizure warrants signed by Magistrate Judge Mason under 18 U.S.C. § 981(a)(1)(C). Thereafter, Petitioner filed a motion for the seized property's return pursuant to 18 U.S.C. § 981(b)(3) and the court's equitable jurisdiction. In support of his motion, Petitioner argued that the Magistrate Judge had relied upon statements in FBI Special Agent Mark Coleman's affidavit that failed to establish probable cause and omitted material information. (R. 12-13, 05M-370, 05M-371, 10/28/05 Mem., at 1-2; R. 12-14, Supp. Mem., at 1-2.) Petitioner further argued that he had sold the New York apartment to compensate his attorneys in the event that the grand jury returned an indictment against him. (10/28/05 Mem., at 2.) On December 19, 2005, Petitioner withdrew his motion before Magistrate Judge Mason for return of the seized property after the grand jury returned the First Superseding Indictment on November 17, 2005. (R. 12-19, 12/19/05 Minute Order.) Petitioner did not file a motion for the return of the seized property before this Court despite the government's

6

suggestion that Petitioner could raise his claim regarding the seized assets in his criminal proceedings pursuant to *United States v. Moya-Gomez*, 860 F.2d 706, 729-30 (7th Cir. 1988). (R. 12-18, 11/22/05 Resp., at 7.)

## I.     Sixth Amendment Right to Choice of Counsel

Turning to Petitioner's Section 2255 claims, the Sixth Amendment grants a criminal defendant the right to assistance of counsel and, if the defendant has the financial assets to retain his own attorney, to be represented by his counsel of choice. *See United States v. Gonzalez–Lopez,* 548 U.S. 140, 144, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006); *United States v. Sellers,* 645 F.3d 830, 834 (7th Cir. 2011). Here, Petitioner brings a Sixth Amendment right to choice of counsel claim – not an ineffective assistance of counsel claim. The right to choice of counsel "commands, not that a trial be fair, but that a particular guarantee of fairness be provided – to wit, that the accused be defended by the counsel he believes to be best." *Gonzalez-Lopez,* 548 U.S. at 146. In other words, the right to choice of counsel "is separate from the generalized due process right to a fair trial, and thus the deprivation of the right is complete when the defendant is erroneously denied counsel of choice."[1] *Sellers,* 654 F.3d at 834. Any such erroneous denial "constitutes structural error and justifies reversal without inquiry into prejudice."[2] *Id.* The *Gonzalez-Lopez* Court, however, also recognized that "the right to counsel

---

[1] Because Petitioner procedurally defaulted his Sixth Amendment choice of counsel claim, the Court need not address the government's argument that Petitioner's Sixth Amendment rights did not attach until the initiation of Petitioner's criminal proceedings. *See United States v. Stadfeld,* 689 F.3d.2d 705, 711 (7th Cir. 2012).

[2] Although courts do not consider prejudice in conjunction with Sixth Amendment right to choice of counsel claims, the Court notes that Petitioner's trial and appellate counsel were some of the most talented and well-respected attorneys in their field. Edward M. Genson of Genson & Gillespie, a Chicago law firm, was Petitioner's lead counsel in the underlying criminal

of choice 'is circumscribed in several important respects.'" *Id.* at 144-45 (quoting *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)).

In *Gonzalez-Lopez,* the defendant argued that the trial court deprived him of his Sixth Amendment right to counsel of choice because the trial court erroneously disqualified his lawyer of choice. *See id.* at 144. Here, Petitioner argues that he was deprived of his right to counsel of choice because the government seized the assets that he had earmarked to pay his defense counsel. Petitioner's claim, however, is foreclosed by well-established Supreme Court authority that the *Gonzalez-Lopez* decision did not overrule. *See Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 109 S.Ct. 2667, 105 L.Ed.2d 528 (1989); *United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989); *see also United States v. Kaley,* 579 F.3d 1246, 1256 (11th Cir. 2009) (*Gonzalez-Lopez* "in no way addressed what, if any, right a criminal defendant has to use assets subject to criminal forfeiture pursuant to an indictment in order to

---

proceedings. Mr. Genson has received commendations from (1) the Best Lawyers in America; (2) the Leading Lawyers Network; (3) the International Academy of Trial Lawyers; and (4) the American Board of Criminal Lawyers, among others. In addition, Mr. Genson has represented other high-profile criminal defendants including, musician R. Kelly and former Illinois Governor Rod Blagojevich. *See* "Vigorous Blagojevich Defense by Noted Lawyer," *New York Times* (Dec. 18, 2008); "Lawyer Who Defended R. Kelly, Conrad Black Will Represent Embattled Blagojevich," *The National Law Journal* (Dec. 22, 2008). Mr. Genson is an extremely talented and well-known criminal defense attorney in Chicago. Moreover, Edward Greenspan of Greenspan White, a Toronto law firm and Marc W. Martin of Marc Martin, Ltd., a Chicago law firm, represented Petitioner during the district court criminal proceedings. Mr. Martin is another highly-respected and extremely knowledgeable Chicago criminal defense attorney, who has been named one of the Best Lawyers in America for ten years in a row and is well-known for his outstanding written work. Mr. Martin has also represented other high profile criminal defendants, including James Marcello in the "Operation Family Secrets" mob trial. On direct criminal appeal, Andrew L. Frey of the New York office of Mayer Brown, LLP, a global law firm headquartered in Chicago, represented Petitioner. Thereafter, Miguel Estrada of the Washington, D.C. law firm Gibson Dunn represented Petitioner in front of the Supreme Court and on remand to the United States Court of Appeals for the Seventh Circuit.

pay for the legal fees of the counsel of his choice"); *United States v. Kelly*, 305 Fed.Appx. 705, 710-11, 2009 WL 19083, at \*5 (2d Cir. Jan 5, 2009) (unpublished) (*Gonzalez-Lopez* did not overrule *Monsanto* or *Caplin & Drysdale*). More specifically, companion cases *Monsanto* and *Caplin & Drysdale* provide that the government's seizure of forfeitable funds or property based on a probable cause determination does not violate a defendant's Sixth Amendment right to counsel of choice. *See Caplin & Drysdale,* 491 U.S. at 619; *Monsanto,* 491 U.S. at 602. In other words, although a defendant has the right to choice of counsel, he does not have "a right to the release of funds to obtain counsel of [his] choice." *United States v. Phillips,* 434 F.3d 913, 916 (7th Cir. 2005) (per curiam).

Indeed, in *Moya-Gomez*, the Seventh Circuit held "that application of the criminal forfeiture statute to include fees paid to an attorney does not violate the qualified sixth amendment right to counsel of choice." *Id.* at 731. The *Moya-Gomez* court specifically reasoned that "[a] person cannot retain an attorney whose fee he cannot pay with his own assets" and in "the forfeiture situation, the assets in question are not the defendant's." *Id.* at 724. Furthermore, the *Moya-Gomez* court held that to the extent that the pre-trial seizure of a defendant's assets prevents him from retaining counsel of choice, the Fifth Amendment's due process clause requires the district court to hold a hearing – upon request – at which the government must establish that the restrained assets are subject to forfeiture. *See id.* at 730-31; *United States v. Kirschenbaum*, 156 F.3d 784, 792 (7th Cir. 1998); *United States v. Michelle's Lounge,* 39 F.3d 684, 691 (7th Cir. 1994).

Petitioner's Sixth Amendment choice of counsel claim boils down to his argument that the government failed to show probable cause for the forfeiture of the proceeds of his New York

apartment sale in the proceedings before Magistrate Judge Mason, and thus he was denied his right to choice of counsel because he had earmarked those proceeds to pay his attorneys for his criminal defense. In particular, Petitioner maintains that the Coleman affidavit submitted in support of the search warrant omitted material facts and made false and misleading statements, and that the government's conduct in securing the seizure of his property was thus improper. Petitioner also argues that the government's conduct was improper in securing the grand jury's return of the First Superseding Indictment justifying the post-indictment restraint of his property. The government responds that Petitioner has procedurally defaulted this claim because he withdrew his motion for the return of the seized property in front of Magistrate Judge Mason, failed to pursue the return of his seized property pursuant to *Moya-Gomez* in front of this Court, and omitted any such claim on direct appeal. The Court agrees.

Petitioner attempts to explain why he procedurally defaulted his Sixth Amendment choice of counsel claim. Specifically, Petitioner argues that he did not request a *Moya-Gomez* hearing because it would have been pointless due to his other assets.[3] *See Michelle's Lounge,* 39 F.3d 684, 695 (7th Cir. 1994) (*Moya-Gomez* hearing held only "if the district court finds that the defendant has no other assets with which to hire his attorney of choice"). More specifically, under *Moya-Gomez*, a district court can only examine the basis for the government's forfeiture of funds earmarked for counsel of choice if "the district court finds the defendant does not have other assets from which such payments can be made." *Id.* at 730. In short, Petitioner contends that he could not make this showing because he had other assets to pay his counsel. Petitioner

---

[3] Petitioner filed affidavits with the Court revealing these substantial assets in response to the government's attempt to revoke or modify his bond. (05 CR 727-1, R. 202, 206, 211, 213.)

equivocates, however, further explaining that most of these other assets were illiquid and subject to forfeiture because the Superseding Indictments and Superseding Information indicated that "any other property belonging to the defendant" constituted substitute assets pursuant 18 U.S.C. § 1963(m) and 21 U.S.C. § 853(p). Despite Petitioner's equivocation, he did not attempt to raise these issues regarding his assets in a *Moya-Gomez* hearing.

Petitioner also attempts to explain why he did not bring his Sixth Amendment choice of counsel claim on direct appeal to the Seventh Circuit. In particular, Petitioner asserts that the "accuracy of the affidavit through which Mr. Black's assets were seized in the civil forfeiture proceedings pretrial was not part of the trial record and therefore not a ground for direct appeal." (R. 37, Open. Brief, at 4 n.2). Petitioner's assertion is without merit because – as the appellant – he was partially responsible for making sure that the entire district court record was transmitted to the appellate court for review. *See* Fed.R.App.P. 10; *see also LaFollette v. Savage,* 63 F.3d 540, 545-46 (7th Cir. 1995); *United States v. Akin,* 61 F.3d 1279, 1286-87 (7th Cir. 1995). Also, Petitioner had the opportunity to supplement the appellate record pursuant to Federal Rule of Appellate Procedure 10(e)(2), which he failed to do in relation to the affidavit or other parts of the proceedings before Magistrate Judge Mason. Petitioner, however, did successfully supplement the appellate record concerning certain exhibits in PDF form. Further, Petitioner had a skilled appellate lawyer argue his direct appeal who knew how to supplement the record.

Moreover, it is worth noting that this case was hotly litigated from the beginning. Indeed, the docket contains over 800 entries before the jury returned its verdict. During the course of the pretrial proceedings and the trial, Petitioner never informed the Court that he was not represented by his counsel of choice. Also, in order to have Mr. Edward Greenspan, a

11

Canadian attorney, represent him as part of his defense team, Petitioner even waived his right to any claim that Mr. Greenspan's lack of familiarity with United States law violated his rights. (05 CR 727-1, R. 81.) During the waiver proceeding, Petitioner never suggested that Mr. Greenspan and the other trial team members were not his counsel of choice.

Meanwhile, Petitioner has not established any exception to his procedural default. Petitioner, for example, maintains that his choice of counsel claim provides the requisite prejudice to except his procedural default, yet, as discussed, this claim itself is procedurally defaulted. *See Murray,* 477 U.S. at 492. Also, Petitioner has not establish the fundamental miscarriage of justice exception to procedural default because he has failed to provide any new, reliable evidence, *see Schlup,* 513 U.S. at 324, and failed to establish that "in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *House,* 547 U.S. at 537. As such, Petitioner has procedurally defaulted his Sixth Amendment choice of counsel claim, and thus the Court does not reach the merits of his arguments.

## II.     Fourth and Fifth Amendment Claims

Next, Petitioner argues that the government's seizure of the New York apartment proceeds violated his Fourth Amendment right against unreasonable seizures because the government relied upon a defective affidavit in securing the seizure of his property. Petitioner also asserts that he was denied his Fifth Amendment right to due process because there was no probable cause to seize the proceeds of the New York apartment sale. As discussed above, the *Moya-Gomez* decision addressed the Fifth Amendment issue holding that if a pre-trial restraint of a defendant's assets prevents him from retaining counsel of choice, the Fifth Amendment's

12

due process clause requires the district court to hold hearing at which time the government must establish that the restrained assets are subject to forfeiture. *See id.* at 730-31; *United States v. Kirschenbaum*, 156 F.3d 784, 792 (7th Cir. 1998). Petitioner never requested any such hearing nor did he argue on appeal that the government violated his Fifth Amendment right to due process. Similarly, Petitioner withdrew his motion for the return of his seized property and did not argue his Fourth Amendment claim on appeal. Under these circumstances, Petitioner has procedurally defaulted these claims. *See Sandoval,* 574 F.3d at 850-51.

Looking to the exceptions for procedural default, Petitioner maintains that the Sixth Amendment counsel of chocie claim provides the requisite prejudice. As discussed above, Petitioner procedurally defaulted his Sixth Amendment choice of counsel claim, therefore, Petitioner has not established prejudice under the cause and prejudice exception. *See Murray,* 477 U.S. at 492. Also, as discussed above, Petitioner has not established the fundamental miscarriage of justice exception to procedural default. *See House,* 547 U.S. at 537; *Schlup,* 513 U.S. at 324. Because Petitioner has procedurally defaulted his Fourth and Fifth Amendment claims – and has not established any exception to this default – the Court does not reach the merits of these claims.

In the alternative, *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars Petitioner's Fourth Amendment claim. *See Brock v. United States,* 573 F.3d 497, 500 (7th Cir. 2009) ("the principles of *Stone* apply equally to § 2255 motions"). Specifically, *Stone* bars a Section 2255 petitioner from bringing Fourth Amendment claims on collateral review unless the petitioner was denied a full and fair opportunity to contest his claims in the underlying criminal proceeding. *See Brock,* 573 F.3d at 499-500. Here, Petitioner had a full and

fair opportunity to contest the underlying warrants pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) and the seizure of his property under *United States v. Moya-Gomez*, 860 F.2d 706 (7th Cir. 1988). Petitioner, however, withdrew his motion for return of the seized property that was in front of Magistrate Judge Mason and never requested that the Court conduct a *Franks* hearing or hearing under *Moya-Gomez.* As such, *Stone* bars Petitioner's Fourth Amendment claim.[4]

### III.    Evidentiary Hearing

Further, the Court, in its discretion, denies Petitioner's request for an evidentiary hearing because district courts need not hold evidentiary hearings in Section 2255 cases where the motion, files, and records of the case conclusively establish that a petitioner is not entitled to any relief. *See Yu Tian Li v. United States,* 648 F.3d 524, 532 (7th Cir. 2011); 28 U.S.C. § 2255(b). As discussed in detail above, the record in this matter conclusively establishes that Petitioner is not entitled to relief under Section 2255 because he procedurally defaulted all of his claims.

### IV.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Therefore, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present

---

[4]  In his reply brief, Petitioner maintains that he is not bringing a Fourth Amendment claim on collateral review. Instead, he argues that government misconduct "in violating the Fourth Amendment deprived [him] of his Due Process rights, thereby depriving him of his Sixth Amendment right to counsel of choice." (R. 49, Reply Brief, at 11.) Because Petitioner procedurally defaulted all of his claims brought in the present Section 2255 motion, the characterization of Petitioner's constitutional claims is not relevant.

Memorandum, Opinion, and Order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his Section 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Lavin v. Rednour,* 641 F.3d 830, 832 (7th Cir. 2011). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Narvaez v. United States,* 641 F.3d 877, 881 (7th Cir. 2011); 28 U.S.C. § 2253(c)(2). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). In cases where a district court denies a Section 2255 claims on procedural grounds, a certificate of appealability should issue only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

Here, Petitioner has not established that jurists of reason would debate that his Section 2255 motion should have been resolved differently in light of the fact that he procedurally defaulted all three of his claims and did not establish an exception to this default. As such, the Court declines to certify any issues for appeal.

## CONCLUSION

For these reasons, the Court denies Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).  The Court further denies Petitioner's motion for a writ of coram nobis.

**Dated:** February 19, 2013

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**